Gregory G. Skordas, gskordas@schhlaw.com, #3865
Rebecca Hyde Skordas, rskordas@schhlaw.com, #6409
**SKORDAS, CASTON & HYDE, LLC**
560 South 300 East, Suite 225
Salt Lake City, UT 84111
Telephone: (801) 531-7444
Facsimile: (801) 531-8885
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAUD R. KOERBER,<br><br>Defendant. | Case No. 2:17-CR-00037<br><br>**MOTION IN LIMINE TO EXCLUDE TESTIMONY OF GOVERNMENT'S WITNESS RAY BARTHOLOMEW**<br><br>Judge Robert W. Shelby<br>Magistrate Judge Paul M. Warner |

Defendant, Claud R. Koerber, by and through his attorney of record, Rebecca H. Skordas, hereby Motions this Court for an order excluding testimony of Government's witness Ray Bartholomew. The motion should be granted for the following reasons: (1) the testimony is not relevant under Federal Rule of Evidence 401; (2) any minimal relevancy under Rule 401 is substantially outweighed by other concerns under Rule 403; and (3) the testimony of Mr. Bartholomew is inadmissible lay opinion testimony under Rule 701.

## ARGUMENT

Rule 401 of the Federal Rules of Evidence states that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Rule 403 of the Federal Rules of Evidence

allows for the exclusion of relevant evidence if, "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The purpose of excluding potentially relevant evidence under Fed. R. Evid 403 is not simply because the evidence may undermine one party's position; instead, the purpose is to avoid proffering evidence which suggests to a jury that it should render its verdict on an improper basis. *United States v. McVeigh,* 153 F.3d 1166, 1191 (10th Cir. 1998). This danger of unfair prejudice is most likely to occur in situations where evidence may elicit an emotional or personal response which adversely affects the jury's attitude toward the defendant. *United States v. Archuleta,* 737 F.3d 1287, 1293 (10th Cir. 2013).

Rule of Evidence 701 allows lay witnesses to give opinion testimony if the testimony is, "(a) rationally based on the witness' perception; (b) helpful to clearly understanding the witness' testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge. . ."

Fed. R. Evid. 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible. *United States v. Banks*, 761 F.3d 1163, 1170 (10th Cir. 2014). In *Banks,* the Court declined to admit testimony of proposed experts where the proponent of the testimony could not establish the necessary facts or data upon which the testimony would rely. *Id.* More specifically, "[a]n essential component of the relevance evaluation is the determination of

whether the proposed expert testimony fits the issues in the case." *In re Williams Sec. Litig.,* 496 F. Supp. 2d 1195, 1231 (N.D. Okla. 2007). The qualifications and reliability of an expert witness' proffered testimony is examined for general qualifications as well as whether those qualifications can be properly tied to the matters of the proposed testimony. *Id.* at 1232.

**ANALYSIS**

While the government has not yet proffered the nature and scope of Mr. Bartholomew's proposed testimony, according to his interview with investigators (see attached), it appears the proffered testimony of Mr. Bartholomew would relate to a one-time interaction with Mr. Koerber, declining to perform an audit of Mr. Koerber's company Franklin Squires (it's actually unclear whether it was for Franklin Squires, Founders Capital, or both), a cursory review of some internally-generated financial statements that are from Franklin Squires (and possibly Franklin Squires related companies), and an internet search of Mr. Koerber. This testimony is not relevant to any controverted issue, the probative value is substantially outweighed by the danger of unfair prejudice as well as needlessly presenting potentially cumulative evidence. Mr. Bartholomew's presumed testimony cannot demonstrate any element of the alleged offenses, the intent of the defendant, nor any other controverted issue as required by Rule 401.

Additionally, any opinion formed by Mr. Bartholomew's cursory review of financial statements and an internet search of Mr. Koerber are inadmissible under Fed. R. Evid. 701 and 702. Mr. Bartholomew's testimony does not meet the requirements of expert testimony. Though Mr. Bartholomew may have requisite knowledge and experience as an expert, his knowledge of Mr. Koerber and Mr. Koerber's company is minimal at best. As discussed in *In re Williams* the premise of expert testimony requires a showing that the expert's knowledge has been reliably applied to the instant matter. Mr. Bartholomew cannot meet that requirement. He was contacted

in early 2007 to perform a compilation audit for Franklin Squires or Founders Capital. Mr. Bartholomew was not engaged, was not provided a full set of records, and for the initial conversation was provided only a small notebook of internally-generated financial statements of Franklin Squires or Franklin Squires related companies, for review to determine whether he would have the time and ability to perform the audit in a "time crunch" scenario.

Mr. Bartholomew, per his own statements to investigators, looked at the financial statements, consulted with one of his colleagues and explained to Mr. Koerber and a CPA working with Mr. Koerber that there was simply not enough time. Mr. Bartholomew, according to his interview, did not communicate any concerns to Mr. Koerber about the content of the transactions, but does say he or his colleague performed an internet search of Mr. Koerber, and then decided he would not be able to perform the requested audit. Mr. Bartholomew then added an explanation about high rates of return and internal loans between closely held companies. But, he was not privy to any significant information regarding Mr. Koerber or his companies' finances; he was not privy to any of the actual loan transactions and related documents. He did not undertake a professional or personal review of the records beyond the cursory review of the notebook, which he says he returned. Thus, Mr. Bartholomew is incapable of having formed a reliably based opinion as required by the Rules of Evidence and contemplated in case law.

Mr. Bartholomew's testimony is not admissible under Rule 701. Presumably, Mr. Bartholomew would testify that he did not feel comfortable performing an audit of Franklin Squires for two reasons: (1) the interest rates being paid by and between Mr. Koerber's companies was inconsistent with common interest rates and (2) there were a high number of receivables and payables between related entities. Mr. Bartholomew's concerns are, by his own testimony, not substantiated and are merely speculative. Mr. Bartholomew's testimony would

most likely be based on his cursory review of a partial selection of incomplete financial statements provided to him for a preliminary determination of whether he and his firm would be willing and able to do the job and be hired. They were not hired.

Mr. Bartholomew's testimony would also be presumably based upon his knowledge of financial accounting practices generally. However, this type of testimony is not admissible lay opinion testimony as Rule 701 specifically excludes such testimony unless it is brought in under Rule 702. As discussed above, Mr. Bartholomew's cursory review of these statements is not enough to establish reliable application of his knowledge or application to the facts and circumstances of this case. Nor is Mr. Bartholomew's opinion as to the information he gleaned from the internet search he performed regarding Mr. Koerber and his companies.

On the other hand, allowing Mr. Bartholomew to testify would create the unreliable and impermissible impression that something was wrong or illegal about Mr. Koerber's business based upon speculation and cursory review by a person the government introduces as having professional credibility. Given that Mr. Bartholomew is a CPA, his testimony would give the improper impression that Mr. Bartholomew was qualified as an expert in this matter despite the clear lack of foundation as outlined above. As discussed in *Archuleta* and *McVeigh,* the jury's likely reliance on Mr. Bartholomew's testimony as that of an expert, would be unduly prejudicial. The prejudicial nature of Mr. Bartholomew's proposed testimony is further supported by the notion that Mr. Bartholomew's decision not to fully engage in the audit was a result of an internet search of Mr. Koerber. The personal opinions of Mr. Bartholomew are wholly irrelevant to any underlying charged offense or any element of a charged offense, yet the proffered testimony would necessarily require Mr. Bartholomew to expand upon his reasoning. As prohibited by *Archuleta* and *McVeigh,* the reasoning behind Mr. Bartholomew's declination

would suggest to the jury an improper animus toward Mr. Koerber and ultimately allow the jury to reach their conclusion on an improper basis. This is unfairly prejudicial and, as discussed above, irrelevant. This danger of unfair prejudice here substantially outweighs any potential probative value.

The apparent value of Mr. Bartholomew as a government witness, given the above, is to opine on what a jury might infer on Mr. Koerber's state of mind or intention – based upon the "hallmarks" of too high interest rates and internal operation loans among closely held companies. But, Mr. Bartholomew could only answer questions on any topic pertaining to Mr. Koerber's actions, or his companies, based upon hypothetical speculation, since his knowledge and information is clearly insufficient to form any professional opinion conclusively as to the nature and extent of Mr. Koerber's business, actions, and operations. This kind of testimony would be highly improper and impermissibly prejudicial. *See e.g. United States v. Boyd*, 55 F.3d 667, 672 (D.C. Cir. 1995) ("If a jury has reason to be unsure of a defendant's guilt, but is made to listen to an 'expert' who claims to know the defendant's state of mind, the jurors may rely on the purported expertise of the Government witness to cure the ambiguity that they face. This is precisely what the Rule prohibits, for it is the jurors (not the expert) who must decide the ultimate issue of fact. There would be little need for a trial before a jury" if an expert is allowed to simply speculate and to declare conclusions). Finally, Mr. Bartholomew has not been noticed as an expert, has not produced a report (nor could he, as described above), and his testimony cannot, in any event, be allowed as an expert or as a lay witness.

**CONCLUSION:**

Mr. Bartholomew's anticipated testimony should be excluded because it (1) is not relevant under Federal Rule of Evidence 401; (2) any minimal relevancy under Rule 401 is

substantially outweighed by other concerns under Rule 403; and (3) the testimony of Mr. Bartholomew is inadmissible lay opinion testimony under Rule 701.

Defendant, Claud R. Koerber, respectfully requests this Court exclude the testimony of the Government's proposed witness Ray Bartholomew.

RESPECTFULLY SUBMITTED this 26th day of July 2017.

__/s/ Rebecca H. Skordas_________
Attorney for Defendant

Rebecca Hyde Skordas (#6409)
Skordas Caston & Hyde, LLC
rskordas@schhlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July 2017, I filed a true and correct copy of the foregoing **MOTION IN LIMINE TO EXCLUDE TESTIMONY OF GOVERNMENT'S WITNESS RAY BARTHOLOMEW** with the Clerk of the Court using CM/ECF system, which sent notification of such filing to the following:

Stewart C. Walz Assistant United States Attorney
stewart.walz@us.doj.gov
Tyler Murray, Assistant United States Attorney
tyler.murray.2@usdoj.gov
Ruth Hackford-Peer, Assistant United States Attorney
ruth.hackford-peer@usdoj.gov
Aaron B. Clark, Assistant United States Attorney

___/s/ Vicki Tolman, Secretary ___________
SKORDAS, CASTON & HYDE

FD-302a (Rev. 10-6-95)

318E-SU-63343

Continuation of FD-302 of Ray Baird Bartholomew , On 07/21/09 , Page 2

business. At the meeting[4], Bartholomew and Winward were given what looked like internally generated business financial statements by Koerber. The statements could have been generated by a Quickbooks application. After reviewing the statements, Bartholomew was alarmed due the following:

1) The interest rates owed and being paid by Koerber's company were between 60 and 72 percent. In Bartholomew's opinion, these interest rates are way out of line with what legitimate companies pay;

2) There was a high amount of receivables and payables involving Koerber related entities. Whenever businesses have related party transactions, the legitimacy of the transactions should be considered. Most of Koerber's billings were between related Koerber entities;

3) Koerber had not previously had an outside entity audit his business before;

4) Koerber needed the compilation done very quickly;

5) Koerber's business was not doing as well as it had in the past and;

6) The financial statements had footnote language that appears to have been created by Koerber that was not the language CPAs normally use.

During the meeting, Koerber indicated that Koerber only needed the compilation performed for the state of Utah. Koerber did mention that Koerber had had some prior problems with the state of Wyoming and that there was some untrue negative information about Koerber on the web.

After the meeting, Bartholomew searched the web for information about Koerber and Koerber's business. Bartholomew

---

[4] The purpose of the meeting was to determine if Squire and Company wanted to become involved with FranklinSquires and establish a business relationship.


FBI302-012-0002

FD-302 (Rev. 10-6-95)



FEDERAL BUREAU OF INVESTIGATION

Date of transcription 7/21&22/09

Ray Baird Bartholomew ("Bartholomew"); Date of Birth: September 2, 1958; work address: 1329 South 800 East, Orem, Utah 84097; work telephone number: 801-494-6024; fax telephone number: 801-226-7739; was contacted in regard to the FranklinSquires' investigation and Rick Koerber ("Koerber") asking Bartholomew's company (Squire and Company) to do some accounting work for Koerber's business. After being advised of the identity of the interviewing agent and nature of contact, Bartholomew provided the following information:

Bartholomew is a Certified Public Accountant ("CPA")/Partner at Squire and Company, which performs accounting related work but is not in any way owned by or has any financial ownership interest with FranklinSquires.

About 2 or 2 ½ years ago, an employee[1] of Koerber contacted Squire and Company and set up an appointment for Koerber and this employee to meet with Bartholomew and Paul Winward ("Winward")[2]. The purpose of the meeting was to discuss a compilation[3] involving Koerber's business financial statements. The meeting was held at Koerber's office on the corner of University and East Bay in Provo, Utah and lasted about an hour to two hours. Koerber told them that Koerber was in the real estate

---

[1] Bartholomew described the employee as follows: young white male, 23-25 years of age, recent Brigham Young University graduate, light hair, not very tall, slender build, not very much work experience.

[2] Winward is a Squire and Company Manager.

[3] SA Saxey had two telephone conversations with Barthowlomew (July 21 and 22, 2009). During the first telephone contact, Bartholomew indicated that Koerber asked Bartholomew to perform an audit but after reviewing a document (attached to this FD-302) Barthowlomew contacted SA Saxey and indicated that Koerber had asked for a compilation not an Audit.

Investigation on 7/21&22/09 at Salt Lake City, Utah (telephonically)

File # 318E-SU-63343 Date dictated n/a

by Cameron E. Saxey

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.



FBI302-012-0001

FD-302a (Rev. 10-6-95)

318E-SU-63343

Continuation of FD-302 of Ray Baird Bartholomew , On 07/21/09 , Page 3

looked at Koerber's website and what others were saying about Koerber[5] on other websites. Looking at the web did not give Bartholomew much confidence in Koerber. Bartholomew also discussed Koerber with Dwayne Asay ("Asay") who also did not feel comfortable about Koerber. One thing that bothered Asay was Asay knew an individual that had loaned money to Koerber and had not been paid back.

After meeting with Koerber, obtaining information on the web and speaking with Asay, Bartholomew told Koerber that Squire and Company would not be doing any work for FranklinSquires and returned all documentation to FranklinSquires.

Forrest Allen was FranklinSquires' accountant.

Bartholomew has heard of an accounting firm named Wooley and Wooley.

On July 22, 2009, interviewing agents received the following e-mails from Bartholomew and are attached to this FD-302:

1) E-mail from Bartholomew to SA Saxey, dated July 22, 2009, with attachments (see item numbers 2-5 for attachments);

2) E-mail from Bartholomew to Dwayne Asay, dated September 17, 2007 @ 7:55pm;

3) E-mail from Bartholomew to Rick Koerber, dated September 17, 2007 @ 8:07pm;

4) E-mail from Bartholomew to Francis Lyman, dated September 18, 2007 @ 9:33am;

5) E-mail from Bartholomew to Koerber, dated September 18, 2007 @ 9:37am;

In September 2007, Francis Lyman was working for an accounting firm, was dealing with Koerber's business somehow and was thinking of working full-time for Koerber.

---

[5] Bartholomew ran a search through Google.


FBI302-012-0003



**Copy of correspondence** Wednesday, July 22, 2009 9:01 AM

**From:** "Ray Bartholomew" <RayB@squire.com>

**To:** "'cameronsaxey@yahoo.com'" <cameronsaxey@yahoo.com>

Correspondence.pdf (83KB)

Mr. Saxey,

Attached is a copy of the correspondence you requested. I only have Sent Items. My Inbox for that period has been deleted.

**Ray B. Bartholomew, CPA**

SQUIRE

AUDIT•TAX•ADVISORY

Office: 801-225-6900 Direct: 801-494-6024 Fax: 801-226-7739 Email: rayb@squire.com

www.squire.com





FBI302-012-0004

**Ray Bartholomew**

**From:** Ray Bartholomew
**Sent:** Monday, September 17, 2007 7:55 PM
**To:** Dwayne Asay
**Subject:** Prospective client

Francis Lyman (360-9167) called today and asked for you. I took the call and went and visited with a prospective client for a couple of hours. They need a compilation as soon as possible. Apparently their current CPA firm is not able to finish the audit they have been working on for several months.

The prospect is a very high-profile individual and needs a financial report to give to the state securities division. The balance sheet is primarily notes receivable and payable between many related parties.

I'm not sure we have the resources to take on this project considering the deadline and risks involved.

If you would like to look at this, I need to get back to them first thing Tuesday morning.

Ray




FBI302-012-0005

**Ray Bartholomew**

**From:** Ray Bartholomew
**Sent:** Monday, September 17, 2007 8:07 PM
**To:** 'rick@franklinsquires.com'
**Cc:** Paul Winward
**Subject:** Compilation of Founders Capital, LLC

Hi Rick,

It was good to meet with you and Francis today.

Paul and I have commitments that will keep us occupied until the end of the month. I've tried to contact Dwayne Asay today without success. Francis has worked with Dwayne on other projects. I'm hopeful that Dwayne will be available to assist you with the compiled balance sheet. We will let you know tomorrow.

Ray




FBI302-012-0006

**Ray Bartholomew**

**From:** Ray Bartholomew
**Sent:** Tuesday, September 18, 2007 9:33 AM
**To:** 'Francis'
**Subject:** RE: articles of organization for Founders Capital

Hi Francis,

Thanks.

I sent an email to Rick last night indicating that neither Paul nor I have any current capacity to help with this project. I talked with Dwayne this morning and he is not available; he also has concerns about the business.

I need to get Rick's binder back to him. If you can pick that up from our office, I'll leave it at our front desk. Thanks for asking us. Sorry we can't help.

Best regards,

Ray

---

**From:** Francis [mailto:francis@financialcompassaccounting.com]
**Sent:** Tuesday, September 18, 2007 8:03 AM
**To:** Ray Bartholomew
**Subject:** articles of organization for Founders Capital



FBI302-012-0007

FBI302-012-0007

**Ray Bartholomew**

**From:** Ray Bartholomew
**Sent:** Tuesday, September 18, 2007 9:37 AM
**To:** 'rick@franklinsquires.com'
**Subject:** Regarding the compilation

I talked with Dwayne this morning. We will not be able to take on this project. I've asked Francis to pick up your materials and get them back to you.




FBI302-012-0008